UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JOSHUA TIMOTHY MICHAEL BILLS,       )
                                    )
            Plaintiff,              )
                                    )
v.                                  )       No. 1:22-CV-180-DCP
                                    )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
            Defendant.              )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 14]. Now before the Court are Plaintiff's Motion for Summary Judgment [Doc. 15] and Defendant's Motion for Summary Judgment [Doc. 18]. Joshua Bills ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.      PROCEDURAL HISTORY

On June 27, 2019, Plaintiff completed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a period of disability that began on October 1, 1994 [Tr. 180]. After his application was denied initially [*id.* at 52–62] and upon reconsideration [*id.* at 63–76], Plaintiff requested a hearing before an ALJ [*id.* at 89–91]. A telephonic hearing was held before the ALJ on May 11, 2021 [*Id.* at 27–46]. On May 25, 2021, the ALJ found that Plaintiff was not disabled [*Id.* at 10–22]. The Appeals Council denied Plaintiff's request for review on May 5, 2022 [*id.* at 1–6], making the ALJ's

decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on July 1, 2022, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed competing dispositive motions and supporting memoranda, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since June 27, 2019, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: borderline intellectual functioning, schizophrenia spectrum disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, bipolar disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple, routine tasks; maintain concentration, persistence, and pace for those tasks with customary work breaks; have no contact with the public, occasional contact with co-workers and supervisors, but no team tasks; and can adapt to gradual and infrequent change.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 16, 1992 and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

2

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 27, 2019, the date the application was filed (20 CFR 416.920(g)).

[Tr. 15–21].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the

3

Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation omitted) (noting that conclusory claims of error without further argument or authority may be considered waived).

4

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.   If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.   If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.   If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.   Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R.

5

§§ 416.920(a)(4) & (a)(4)(e). RFC is the most a claimant can do despite his limitations. *Id.* § 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff argues on appeal that the ALJ's decision is not supported by substantial evidence and should be remanded because "[t]he ALJ's RFC does not properly account for Plaintiff's moderate restrictions in concentration, persistence, or pace" [Doc. 16 p. 1; *see also id.* at 15–18]. Plaintiff first argues that the ALJ erred by finding that he had moderate limitations in his ability to concentrate, persist, or maintain pace at step three in the sequential analysis but failing to include any correlating restriction in her RFC determination [*Id.* at 15]. Plaintiff next argues that the ALJ erred because the controlling hypothetical presented to the vocational expert during the administrative hearing, which in turn became the ALJ's RFC determination, did not adequately describe Plaintiff's limitations [*Id.* at 15–18 (citations omitted)]. Specifically, Plaintiff argues that the ALJ erred by finding the opinion of state agency reviewing psychologist, Rebecca Sweeny, Ph.D. ("Dr. Sweeny"), generally persuasive but failing to either include the portion of Dr. Sweeny's opinion regarding Plaintiff's need for additional supervision in her RFC determination or explain why she did not include the limitation [*Id.*]. Plaintiff submits that the ALJ's error was not harmless in light of the vocational expert's testimony that Plaintiff's need for supervision "above normal" would be work preclusive [*Id.* at 18 (citation omitted)].

6

The Commissioner responds that the ALJ's RFC determination is supported by substantial evidence [Doc. 19 pp. 6–14]. In response to Plaintiff's first argument, the Commissioner asserts that the ALJ incorporated a limitation in Plaintiff's ability to concentrate, persist, and maintain pace as part of her RFC determination [*Id.* at 7]. As to Plaintiff's second argument, the Commissioner contends that the ALJ's RFC determination is consistent with Dr. Sweeny's opined concentration-persistence-pace limitation, including the portion of her opinion regarding Plaintiff's need for supervision [*Id.* at 10–11; *see also id.* at 12]. The Commissioner further argues that even if the RFC was not consistent with Dr. Sweeny's statements regarding Plaintiff's need for supervision, "the ALJ was not bound . . . to undiscriminatingly adopt *all* of Dr. Sweeny's limitations or else identify and explicitly elucidate the reasons behind any discrepancies" [*id.* at 11–12 (citations omitted); *see also id.* at 12–13].

Upon review, the Court finds no error in the ALJ's analysis. The ALJ incorporated a concentration-persistence-pace limitation into her RFC determination and, even if she had not done so, such was not required simply because she had found Plaintiff had moderate limitations in this area at step three. The ALJ also was not required to adopt Dr. Sweeny's statements regarding Plaintiff's need for supervision into her RFC determination or explain the omission because Dr. Sweeny's statements did not constitute a concrete, specific limitation and were not otherwise supported by substantial evidence in the record. Finally, even if the ALJ was required to adopt Dr. Sweeny's statements or explain the omission, the ALJ's RFC appropriately accounts for such statements.

### A.     The ALJ's RFC Determination Incorporated a Concentration-, Persistence-, and Pace-Limitation

Plaintiff first argues that the ALJ erred because, despite finding Plaintiff had moderate

limitations in his ability to concentrate, persist, and maintain pace at step three, "the ALJ failed to include any correlating restriction in the RFC" [Doc. 16 p. 15 (citing Tr. 17 & 20)]. As noted above, a claimant's RFC is "the most [they] can do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). In this case, the ALJ determined that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple, routine tasks; maintain concentration, persistence, and pace for those tasks with customary work breaks; have no contact with the public, occasional contact with co-workers and supervisors, but no team tasks; and can adapt to gradual and infrequent change.

[*Id.* at 18].[1]

Plaintiff argues that the ALJ effectively "offered no restriction whatsoever in the area of concentration, persistence, or pace" by finding he can "maintain concentration, persistence, and pace for those tasks with customary work breaks" [Doc. 16 p. 15]. The Commissioner responds that the ALJ's RFC determination limits Plaintiff's ability to concentrate, persist, and maintain pace to "simple, routine tasks" [Doc. 19 p. 7]. The parties' diverging interpretations of the ALJ's RFC determination appear to hinge on their interpretations of the phrase "those tasks," with Plaintiff arguing the phrase refers to "those tasks with customary work breaks" [Tr. 18 ("[Plaintiff] can . . . maintain concentration, persistence, and pace for those tasks with customary work breaks")], and the Commissioner arguing the phrase refers to the "simple, routine tasks" referenced in the preceding portion of the sentence [*Id.* ("[Plaintiff] can understand, remember, and carry out simple routine tasks; maintain concentration, persistence, and pace for those tasks with customary work breaks")].

---

[1]     The ALJ determined at step three that Plaintiff "has a moderate limitation" in "concentrating, persisting or maintaining pace" [Tr. 17].

Plaintiff's interpretation assumes that the ALJ essentially assessed no functional limitations in the area of concentration, persistence, and pace, and thus, lacks merit. In a subsequent portion of her RFC analysis, the ALJ stated that "[m]oderate functional limitations are reasonable based on [Plaintiff's] several severe mental impairments" [Tr. 20]. This finding is inconsistent with Plaintiff's interpretation and supports that the ALJ limited Plaintiff's ability to maintain concentration, persistence, and pace to simple, routine tasks with customary work breaks. Furthermore, the structure of the ALJ's RFC determination corresponds with the structure used by both state agency medical consultants [Tr. 60, 74]. In the additional explanation section of his MRFC determination, the initial state agency consultant first stated, "[Plaintiff] can understand and remember simple tasks only" [*Id.* at 60]. Immediately thereafter the MRFC states in regard to Plaintiff's ability to concentrate, persist, and pace, "Despite some difficulty, [Plaintiff] can concentrate and persist for *the above tasks* for an 8 hour day with customary breaks, within the restrictions applied above" [*Id.* (emphasis added)]. Dr. Sweeny similarly opined in the additional explanation section of her MRFC determination, "[Plaintiff] has the ability to understand and remember simple tasks" [*Id.* at 74]. She then stated immediately thereafter, "For the tasks described above, [Plaintiff] has the ability to maintain concentration, persistence, and pace for periods of two hours at a time without a break for the total 8 hour workday," and "[Plaintiff] will need some supervision in that [he] will need to be checked on from time to time, but will not require constant supervision" [*Id.*]. The ALJ, in turn, seems to have applied a similar structure in first finding "[Plaintiff] can understand, remember, and carry out simple, routine tasks," and then stating immediately thereafter, "[he can] maintain concentration, persistence, and pace for those tasks with customary work breaks" [*Id.* at 18].

Even assuming, however, that the ALJ was not limiting Plaintiff's concentration,

9

persistence, and pace to simple, routine tasks, Plaintiff's first argument does not state a basis for remand. Plaintiff contends the ALJ erred by effectively adopting no limitations in concentration, persistence, and pace despite finding earlier in her decision at step three that Plaintiff had moderate limitations in this area [Doc. 16 p. 15]. However, "[t]o the extent that Plaintiff contends that the ALJ's RFC finding was required to mirror [her] step-three findings, the argument lacks merit" as "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listings of Impairments." *Bookmyer v. Comm'r of Soc. Sec.*, No. 1:22-cv-1004, 2023 WL 2643496, at *6 (W.D. Mich. Mar. 27, 2023) (quoting SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)); *see also Kirkland v. Kijakazi*, No. 3:22-CV-60-DCP, 2023 WL 3205330, at *14 (E.D. Tenn. May 2, 2023) (citing *Bookmyer*, 2023 WL 2643496, at *6).[2] "Instead, the pertinent question is whether the ALJ's RFC determination and accompanying hypothetical questions posed to the vocational expert 'accurately portray[] [a claimant's] individual physical and mental impairments.'" *Kirkland*, 2023 WL 3205330, at *14 (quoting *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020)). The Court now turns to this question in considering Plaintiff's second argument.

**B. The ALJ was Not Required to Incorporate Dr. Sweeny's Statements Regarding Plaintiff's Need for Supervision or Explain the Omission**

Plaintiff argues that the ALJ erred by finding Dr. Sweeny's opinion to be "generally

---

[2]     Notably, the ALJ expressly stated at the end of her step-three analysis that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process" and that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning" [Tr. 17–18].

10

persuasive" but omitting any reference to Dr. Sweeny's statement that Plaintiff "will need some supervision in that [he] will need to be checked on from time to time, but will not require constant supervision" [Doc. 16 pp. 17–18 (quoting Tr. 74)]. Plaintiff asserts that "[w]hen the *controlling* hypothetical (the ALJ's ultimate RFC) inadequately describes Plaintiff's limitations, the vocational expert's conclusion does not serve as substantial evidence that other work could be performed" [*Id.* at 15 (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010))]. Plaintiff further asserts that "where the ALJ 'determines that an opinion or finding is consistent with the evidence, the ALJ must incorporate those limitations in that opinion or finding or provide an adequate explanation for declining to do so'" [*Id.* at 16 (quoting *Pamela D.P. v. Comm'r of Soc. Sec.*, No. 1:22-cv-291, 2022 WL 16958447, at *4 (S.D. Ohio Nov. 16, 2022))].

While Plaintiff acknowledges that the ALJ's RFC determination is consistent with the portion of Dr. Sweeny's opinion that states, "[Plaintiff] has the ability to maintain concentration, persistence, and pace for periods of two hours at a time without a break for the total 8-hour workday," he argues that Dr. Sweeny's limitation "was qualified [in] that Plaintiff 'will need some supervision in that [Plaintiff] will need to be checked on from time to time, but will not require constant supervision'" [*Id.* at 17 (quoting Tr. 74)]. Plaintiff submits that "[t]he lack of any explanation is error as to why extra supervision, a disability determinative fact, was not included" [*Id.* at 18]. Plaintiff argues that the ALJ's omission was also not harmless as the vocational expert testified that "if the hypothetical individual required a supervisor to give him extra help to—to keep him on task above normal," that would be "an accommodation, and that is not compatible with competitive work" [*Id.* (quoting Tr. 45)].

The Commissioner responds that the ALJ's RFC determination is consistent with Dr. Sweeny's statements regarding Plaintiff's need for supervision and that, regardless, the ALJ was

11

not required to adopt all of Dr. Sweeny's opined limitations or explain her reasoning for failing to adopt them [Doc. 19 pp. 10–14]. Specifically, the Commissioner argues that the precise language Dr. Sweeny used in describing Plaintiff's need for supervision is not—as Plaintiff alleges—equivalent to keeping Plaintiff on task "above normal" but, rather, "constitutes no more than average, periodic supervision" and "was merely a modifying explanatory description of the moderate limitation that Dr. Sweeny imposed in the area of maintain concentration, persistence, or pace; it was not a separate, additional limitation altogether" [Doc. 19 pp. 10–11]. The Commissioner further argues that this interpretation of Dr. Sweeny's statements is "bolstered by the fact that Plaintiff was afforded *moderate*, not *marked*, limitations in this area of mental functioning," with "moderate" limitations being those in which the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair" while "marked" limitations are those in which a claimant's functioning is "seriously limited" [*Id.* at 11 (quoting 20 C.F.R. pt. 404, subpart P, app. 1, § 12.00F)]. The Commissioner therefore asserts that "Plaintiff's [] interpretation of a need for 'extra supervision' is consistent with marked limitations—not the moderate restrictions that the ALJ implemented" [*Id.*].

In addition, the Commissioner contends that, even if the ALJ's RFC is not consistent with Dr. Sweeny's opinion, "the ALJ was not bound, under SSR 96-8p, to undiscriminatingly adopt *all* of Dr. Sweeny's limitations or else identify and explicitly elucidate the reasons behind any discrepancies" as "SSR 96-8p does not require the ALJ to perform a 'line-by-line' assessment of a medical opinion, explicitly identifying every limitation that was either adopted or rejected" [*Id.* at 11–12 (citations omitted)]. Rather, the Commissioner argues that "SSR 96-8p directs the ALJ to explain why he does not adopt a medical opinion that *conflicts* with the RFC assessment, but Dr. Sweeny's prior administrative medical finding does not conflict with the RFC finding at all,

and instead, as the ALJ found, actually supports it" [*Id.* at 12 (first citing Tr. 18, 74; then citing SSR 96-8p)].  Finally, the Commissioner argues that Plaintiff's argument "overlooks the reality that the RFC is an administrative determination reserved to the Commissioner, not a medical professional" [*id.* (citing 20 C.F.R. § 416.945(a)(3))], meaning "the RFC need not perfectly correlate to a functional assessment from any specific medical source" [*Id.* at 12–13 (first citing *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020); then citing *Rudd v. Comm'r of Soc. Sec.*, 431 F. App'x 719, 728 (6th Cir. 2013))].

Upon review, the Court finds that the ALJ did not err in her RFC analysis.  The ALJ was not required to adopt Dr. Sweeny's statements regarding Plaintiff's need for supervision or explain the omission since Dr. Sweeny's supervision restriction was not a concrete, specific limitation supported by substantial evidence in the record.  Furthermore, the ALJ's RFC sufficiently accounts for Dr. Sweeny's opined supervision restrictions.  The Court therefore finds that remand is not warranted.

Dr. Sweeny completed a medical evaluation form on February 6, 2020, as part of Plaintiff's disability claim on reconsideration [Tr. 68–74].  In the RFC portion of the form, Dr. Sweeny was asked to "[r]ate [Plaintiff's] sustained concentration and persistence limitations" in eight areas [*Id.* at 72–73].[3]  Dr. Sweeny opined that Plaintiff's "ability to sustain an ordinary routine without

---

[3]        Dr. Sweeny opined that Plaintiff's "ability to carry out detailed instructions" was markedly limited [Tr. 72].  She opined that Plaintiff's "ability to maintain attention and concentration for extended periods"; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "sustain an ordinary routine without special supervision"; and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" were all moderately limited [*Id.* at 72–73].  She opined Plaintiff's abilities in the remaining areas, including "carry[ing] out very short and simple instructions"; "work[ing] in coordination with or in proximity to others without being distracted by them"; and "mak[ing] simple work-related decisions," were not significantly limited [*Id.*].

13

special supervision" was "[m]oderately limited" [*Id.* at 73]. When asked to provide additional explanation for her opined limitations, Dr. Sweeny stated in pertinent part:

> A. [Plaintiff] has the ability to understand and remember simple tasks.
>
> B. For the tasks described above, [Plaintiff] has the ability to maintain concentration, persistence, and pace for periods of two hours at a time without a break for the total 8 hour workday. [Plaintiff] will need some supervision in that [he] will need to be checked on from time to time, but will not require constant supervision.

[*Id.* at 74].

In evaluating the persuasiveness of Dr. Sweeny's findings along with the findings of the state agency consultant who evaluated Plaintiff's claim initially, the ALJ found:

> [The] [p]rior administrative medical findings [from the initial state agency consultant and Dr. Sweeny] are generally persuasive as the evidence summarized above supports borderline intellectual functioning but not an intellectual disorder and moderate limitation in all areas of work-related mental functioning (Exhibits B2A, B4A). The findings on initial determination and reconsideration differ somewhat regarding the claimant's capacity for social interaction. Considering the evidence submitted at the hearing level, I find no contact with the public and occasional contact with co-workers and supervisors, but no team tasks, most consistent with the evidence overall (Exhibits B7F through B9F).

[*Id.* at 20].

Plaintiff takes the position that "where [an] ALJ 'determines that an opinion or [prior administrative] finding is consistent with the evidence, the ALJ must incorporate those limitations in that opinion or finding or provide an adequate explanation for declining to do so'" [Doc. 16 p. 16 (citations omitted)]. Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), and *Pamela D.P. v. Commissioner of Social Security*, No. 1:22-cv-291, 2022 WL 16958447 (S.D. Ohio Nov. 16, 2022). In *Ealy*, the Sixth Circuit found the ALJ's controlling hypothetical to the vocational expert was not supported by substantial evidence because, despite crediting the state agency consultant's opinion, the ALJ failed to include a portion of the

14

consultant's opinion regarding the plaintiff's ability to concentrate, persist, and maintain pace. *See Ealy*, 594 F.3d at 516–17. Specifically, while the state agency consultant "limited [the plaintiff's] ability to sustain attention to complete simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical,'" *id.* at 516 (second alteration in original), the ALJ's RFC determination and hypothetical to the vocational expert only "limited [Plaintiff] to simple, repetitive type jobs in a non-public work setting." *Id.* The Court of Appeals held that the ALJ had erred because "[t]he hypothetical posed by the ALJ [to the vocational expert] should have included the restriction that [the plaintiff] could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id.*

The Sixth Circuit subsequently addressed the holding of *Ealy* in *Smith-Johnson v. Commissioner of Social Security*, 579 F. App'x 426 (6th Cir. 2014). There, the plaintiff relied on *Ealy* to argue that the ALJ's RFC determination did not portray the limitations outlined in the medical opinions to which the ALJ assigned great weight, including the opinion that the plaintiff was "moderately limited in her ability 'to maintain attention and concentration for extended periods.'" *Id.* at 436. The Sixth Circuit rejected the plaintiff's argument, noting that in *Ealy*, "[the] court held that the RFC assessment and the hypothetical did not adequately reflect the claimant's limitations because it truncated the doctor's specific restrictions" whereas in *Smith-Johnson*, "[the medical examiner] did not place any concrete functional limitations on [the plaintiff's] abilities to maintain attention, concentration, or pace." *Id.* at 437. Subsequent courts have interpreted *Smith-Johnson* as limiting the holding of *Ealy* to instances in which the ALJ truncated, or omitted, "concrete functional limitations upon [the claimant's] abilit[ies] 'to maintain attention, concentration, or pace." *See Bennett v. Berryhill*, No. 2:17-CV-00218, 2019 WL 845821, at *9 (E.D. Tenn. Jan. 3, 2019) ("In distinguishing *Smith-Johnson* and *Ealy*, the Sixth Circuit focused

15

on the absence of 'concrete functional limits' . . . ." (*quoting Smith-Johnson*, 579 F. App'x at 437)).

In *Pamela D.P.*, the second case relied on by Plaintiff, the ALJ found persuasive the state agency consultant's opinion that the plaintiff could "learn and perform work that is simple and repetitive in nature in a setting *without demands for fast pace*," but only included in the RFC that the plaintiff "can perform simple routine tasks and instructions defined as no more tha[n] three-step instructions and three-step tasks." 2022 WL 16958447, at *2–3. The court found the ALJ erred by "not explain[ing] elsewhere in her decision how the omitted pace limitations lacked consistency or supportability" because "where, as is the case here, an ALJ determines that an opinion or finding is consistent with the evidence, the ALJ must incorporate those limitations in that opinion or finding or provide an adequate explanation for declining to do so." *Id.* at *4. The court reasoned that "[a]n ALJ's failure to provide such an explanation requires remand because it prevents this Court from conducting meaningful review to determine whether substantial evidence supports the ALJ's decision." *Id.* (citations omitted).[4]

In opposition to Plaintiff's position, the Commissioner contends that the ALJ is not required "to perform a 'line-by-line' assessment of a medical opinion, explicitly identifying every limitation that was either adopted or rejected" [Doc. 19 pp. 11–12 (first citing SSR 96-8p, 1996

---

[4]     Other courts have applied similar reasoning in finding error when an ALJ determines an opinion to be persuasive but fails to incorporate a limitation from the opinion or explain the omission. *See Collins v. Comm'r of Soc. Sec.*, No. 2:17-CV-1028, 2019 WL 1512539, at *5 (S.D. Ohio Apr. 8, 2019) ("The ALJ's failure to explain the omission . . . renders [the court] unable to assess the ALJ's reasoning."), *report and recommendation adopted*, 2019 WL 1858823 (S.D. Ohio Apr. 25, 2019); *Dees v. Soc. Sec. Admin.*, No. 1:19-CV-01114, 2020 WL 61082, at *7–8 (N.D. Ohio Jan. 6, 2020) (collecting cases for the proposition that "[w]here the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC" as "[a]n ALJ must provide a discussion at each step in a manner that permits meaningful review of the decision" (internal quotations and citations omitted)).

16

WL 374184, at *7 (July 2, 1996); then citing *Daniels v. Comm'r of Soc. Sec.*, No. 3:19-CV-02946, 2020 WL 6913490, at *10 (N.D. Ohio Nov. 24, 2020); then citing *Morandy v. Comm'r of Soc. Sec.*, No. 2:19-cv-13464, 2021 WL 925227, at *1, *6 (E.D. Mich. Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 915540 (E.D. Mich. Feb. 22, 2021); then citing *Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 965027, at *6 (E.D. Mich. Mar. 30, 2022))].

In *Daniels*, the plaintiff raised a similar argument to that raised in *Pamela D.P.*, arguing that the ALJ erred by finding a psychological consultative examiner's opinion persuasive but failing to either include a portion of the examiner's opined limitations in the RFC determination or explain the omission. *See Daniels*, 2020 WL 6913490, at *10. The court disagreed, finding that "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim . . . [or] wholesale" and that "[f]urthermore, an ALJ is not obligated to explain each limitation or restriction adopted or not adopted from a non-examining physician's opinion." *Id.* (citations omitted). The *Daniels* court, in turn, relied on *Smith v. Commissioner of Social Security*, No. 5:11 CV 2104, 2013 WL 1150133 (N.D. Ohio Mar. 19, 2013), *aff'd*, No. 13-3578 (6th Cir. Jan. 30, 2014), and *Reeves v. Commissioner of Social Security*, 618 F. App'x 267, 275 (6th Cir. 2015).

In *Smith*, the court stated that "there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight" because "[w]hile an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the commissioner." *Smith*, 2013 WL 1150133, at *10 (citation omitted). The Sixth Circuit affirmed the district court's decision by unpublished order, stating "there is no requirement that an ALJ adopt the entirety of a state expert opinion, even if affording it significant weight, or that the ALJ provide an explanation

17

for why certain limitations proposed by the expert were not incorporated into his [RFC]." *Smith v. Comm'r of Soc. Sec.*, No. 13-3578, 2014 U.S. App. LEXIS 25221, at *4 (6th Cir. Jan. 30, 2014).[5] In *Reeves*, the Sixth Circuit similarly rejected the plaintiff's argument that the ALJ had erred by assigning great weight to the state agency medical consultants' opinions but failing to incorporate in his RFC determination some of the limitations opined by one of the state agency consultants. *See Reeves*, 618 F. App'x at 275. The Sixth Circuit relied on the fact that "only [one of the two state agency consultants] described these limitations, which lack substantial support elsewhere in the record" and that "[a]lthough the ALJ gave great weight to [the consultant's] opinion, he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record." *Id.*

Thus, both Plaintiff and the Commissioner cite relevant case law supporting their positions. In *Kreilach v. Commissioner of Social Security*, the court addressed similar arguments and supporting authority to those raised by the parties here. *See* 621 F. Supp. 3d 836, 842–46 (N.D. Ohio 2022) (noting that "Plaintiff [took] the position that, if the ALJ omits from the [RFC] a limitation contained in an opinion that the ALJ otherwise finds persuasive and consistent with the record, the ALJ must provide an explanation for the omission" while the Commissioner argued that "the ALJ was not required to explain each limitation adopted or not adopted from [the state agency consultant's] opinion"). In summarizing the relevant case law, the court noted that "[i]n *Reeves*, the [Sixth Circuit] held that the ALJ did not err by omitting a limitation because only one

---

[5]  In reaching this conclusion, the Sixth Circuit relied on a portion of the regulations that stated, "[ALJ's] are not bound by any findings made by State agency medical consultants." *Smith,* No. 13-3578 at *4 (quoting 20 C.F.R. §§ 404.1527(e)(2)(i) & 416.927(e)(2)(i) (2014)). That portion of the regulations has subsequently been removed. *See* 20 C.F.R. § 404.1527(e)(2)(i) (2022).

of the two State agency consultants described the limitation and the limitation lacked substantial support elsewhere in the record . . ." *Id.* at 843 (citing *Reeves*, 618 F. App'x at 275). The court then went on to find,

> In the context of an omitted limitation, whether the omission is error depends on the nature of that limitation. Specifically, the pertinent question in examining a potential limitation is whether the medical evidence compels a specific, concrete restriction on the claimant's ability such that the ALJ was required to include it in the residual functional capacity or explain its omission.

*Id.* at 844 (first citing *Walver v. Saul*, No. 1:20-cv-0504, 2022 WL 1134300, at *4–5 (N.D. Ohio Apr. 18, 2022) (citing *Smith-Johnson*, 579 F. App'x at 436–37); then citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016)).

In analyzing the plaintiff's claim in that case, the *Kreilach* court found the ALJ had not erred in failing to include the state agency consultant's opined limitation or explain the omission because it was not a concrete, specific limitation and because there was not substantial evidence in the record, other than the state agency consultant's opinion, to support the additional limitation. *See id.* at 845–46 (distinguishing the plaintiff's case from cases where the state agency consultant had included a concrete, specific limitation and noting that the other state agency consultant did not assess the same limitation and there was otherwise not substantial evidence to support the limitation); *see also Hamric v. Comm'r of Soc. Sec.*, No. 1:22-CV-01034-CEH, 2023 WL 4847693, at *6 (N.D. Ohio July 27, 2023) ("The court [in *Kreilach*] ultimately affirmed the ALJ's decision because the restriction . . . had varying meanings and was equivocal. . . . [and] because the disputed restriction was not supported by substantial evidence." (citing *Kreilach*, 621 F. Supp. 3d at 842, 846)).

This Court finds the framework set forth in *Kreilach* to be helpful in that it accounts for the holdings of both *Ealy* and *Reeves* by focusing on the specific limitation at issue and whether it

19

is both concrete and specific and supported by substantial evidence. In applying that framework here, the Court finds that the ALJ was not required to adopt Dr. Sweeny's opined supervision limitation or explain the omission because the limitation is not a concrete, specific limitation and is not supported by substantial evidence in the record. The portion of Dr. Sweeny's opinion that Plaintiff argues the ALJ failed to include or explain as part of her RFC determination was her statement, "[Plaintiff] will need some supervision in that [he] will need to be checked on from time to time, but will not require constant supervision" [Tr. 74]. On appeal, Plaintiff equates Dr. Sweeny's statement to Plaintiff needing supervision "above normal"—the language used by the vocational expert in her testimony [Doc. 16 p. 18]. The Commissioner argues that Dr. Sweeny's statement "constitutes no more than average, periodic supervision" and "was merely a modifying explanatory description of the moderate limitation that Dr. Sweeny imposed in the area of maintaining concentration, persistence, or pace; it was not a separate, additional limitation altogether" [Doc. 19 p. 11].

Dr. Sweeny's statement—that Plaintiff will need "some" supervision [Tr. 74]—does not, on its own, explain the level of supervision Plaintiff will need. *See Scott v. Saul*, No. 5:18 CV 2897, 2020 WL 2393155, at *3 (N.D. Ohio May 12, 2020) (stating the medical sources' statements that the claimant "would need some flexibility in terms of time limits and production standards. . . shed no light on the meaning of the term 'flexible break schedule'"). Dr. Sweeny further explains that "some" supervision means that Plaintiff "will need to be checked on from time to time" [Tr. 74]. However, that Plaintiff will need to be "checked on" is vague as to what type of supervision Plaintiff will need while the phrase "time to time" is vague as to the frequency with which Plaintiff will need to be supervised. *See Overstreet v. Saul*, No. 1:20-CV-00645, 2021 WL 5017754, at *15 (N.D. Ohio May 17, 2021) (finding the examiner's statement that the plaintiff "needs flexible

20

break times is not a concrete functional limitation" as it did not address "taking breaks at a specific frequency").[6] Finally, although Dr. Sweeny does address the frequency with which Plaintiff will need to be supervised by stating Plaintiff "will not require constant supervision," this statement only goes towards the frequency of supervision Plaintiff will not need. Thus, Dr. Sweeny's statement does not, on its own, convey a concrete, specific limitation as to the frequency or type of supervision Plaintiff will need.

The remainder of Dr. Sweeny's opinion also does not clarify the level of supervision Plaintiff will need. In the only other prior portion of her opinion addressing the level of supervision Plaintiff will need, Dr. Sweeny was asked to rate Plaintiff's "ability to sustain an ordinary routine without special supervision" [Tr. 72]. Dr. Sweeny responded that Plaintiff is "moderately limited" in this area [Id.]. As noted by the Commissioner, a "moderate limitation" means the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair" whereas a "marked limitation" means a claimant's functioning in an area is "seriously limited." 20 C.F.R. pt. 404, subpart P, App'x 1, § 12.00F. That Plaintiff's ability to function without special supervision is "fair" and not "seriously limited" is not sufficiently concrete or specific to indicate the type or frequency of supervision Plaintiff will need.

Accordingly, the Court finds that neither Dr. Sweeny's statement that Plaintiff will need "some" supervision in that he will need to be "checked on" from "time to time" nor the remainder of Dr. Sweeny's opinion sets forth a concrete, specific supervision limitation. That Dr. Sweeny did not set forth a concrete, specific limitation distinguishes this case from *Ealy* and *Pamela D.P.* In *Ealy*, the Sixth Circuit found the ALJ had erred by omitting any reference to the portion of the

---

[6]     If anything, the phrase "time to time" appears to amount to a normal level of supervision as opposed to the "above normal" level of supervision Plaintiff suggests.

state agency consultant's opinion in which he had limited Plaintiff to jobs "where speed was not critical"—a limitation the *Smith-Johnson* later clarified was concrete and specific. *Ealy*, 594 F.3d at 516; *see Smith-Johnson*, 579 F. App'x at 437 ("Unlike in *Ealy*, Dr. Kriauciunas did not place any concrete functional limitations on [the plaintiff].") Similarly, the court in *Pamela D.P.* found the ALJ had erred by failing to include the state agency consultant's opinion that the plaintiff was limited to work "in a setting without demands for fast pace." 2022 WL 16958447, at *3–4. Although the court did not specifically address whether this limitation was concrete and specific, it is substantively the same as the concrete, specific limitation set forth in *Ealy*. Here, in contrast, the challenged limitation was not concrete or specific for the reasons discussed above. The Court therefore finds that the ALJ was not required to either incorporate Dr. Sweeny's statements regarding Plaintiff's need for supervision or explain the omission.

Further, aside from Dr. Sweeny's statements regarding Plaintiff's need for supervision, Plaintiff points to no other medical opinion that assessed a restriction about supervision. Notably, the other state agency consultant who reviewed Plaintiff's claim initially found that Plaintiff's "ability to sustain an ordinary routine without special supervision" was "[n]ot significantly limited" [Tr. 59]. The state agency consultant also did not reference any limitations regarding Plaintiff's need for supervision in the "Additional Explanation" section of his opinion [*Id.* at 60]. *See Reeves*, 618 F. App'x at 275 (finding the ALJ was not required to adopt additional limitations from the state agency consultant's opinion in part because only one of the two state agency consultants included that limitation); *Kreilach*, 621 F. Supp. 3d at 846 (finding the ALJ was not required to incorporate a limitation in part because only one of the two state agency psychological consultants gave the opinion).

The remainder of the record also does not provide substantial evidence for Dr. Sweeny's

statements. In his brief, Plaintiff argues that Dr. Sweeny's opined limitations are consistent with the remainder of the record [Doc. 16 p. 17 n.2]. Plaintiff asserts, "Psychologist Ramey opined Plaintiff's concentration is mildly to moderately restricted; and his persistence was somewhat limited with low frustration tolerance" [*Id.* (citing Tr. 285)]; "Dr. Berry-Sayer opined moderate impairment in short-term memory, his ability to sustain concentration, and in his long-term and remote memory functioning" [*Id.* (citing Tr. 328)]; and "Psychologist Brown opined Plaintiff's 'issues appear to have a negative effect on [Plaintiff's] development of age-appropriate life skills that one needs to become a functioning adult'" [*Id.* (quoting Tr. 434)].

This evidence, while relevant to Plaintiff's ability to maintain concentration, persistence, and pace more generally, does not directly address the type or frequency of supervision Plaintiff will need. Furthermore, the ALJ found the opinions of Ann M. Ramey, M.S. ("Psychologist Ramey"), Kimberlee Berry-Sawyer, Ph.D., H.S.P. ("Dr. Berry-Sawyer), and Susan H. Brown, M.S. ("Psychologist Brown"), were unpersuasive. Specifically, the ALJ found that "the medical opinions from remote consultative psychological examiners [Psychologist Ramey and Dr. Berry-Sawyer] are not persuasive regarding the claimant's functioning during the period currently under consideration" because "the claimant's ability to interact appropriately with others is not markedly limited and . . . only episodes from his childhood are offered to support greater than moderate limitation" [*Id.* at 20 (first citing *id.* at 278–87; then citing *id.* at 323–29)]. The ALJ also found that "[Psychologist] Brown's assessment that the claimant's cognitive ability is significantly below average is not persuasive based on prior assessments and prior administrative medical findings of borderline intellectual functioning and the level of functioning reflected in treatment records" because "she offered no medical opinion regarding what the claimant can do and whether he has impairment-related limitation in the ability to perform specific demands of work" [*Id.* (citing *id.*

23

at 431–35)].

In sum, the only additional evidence that Plaintiff argues is consistent with Dr. Sweeny's opined supervision limitation are opinions from Plaintiff's medical examiners regarding Plaintiff's ability to maintain concentration, persistence, and pace more generally. The ALJ, however, addressed these examiners' opinions, including their opined functional limitations or lack therefore, as part of her RFC determination and found them unpersuasive. In the absence of any additional evidence that would support Dr. Sweeny's opined supervision limitation—including the absence of a similar limitation from the initial state agency medical examiner—the Court finds that Dr. Sweeny's opined supervision limitation is not supported by substantial evidence in the record. The Court therefore finds that, for this reason as well, the ALJ was not required to adopt Dr. Sweeny's opined supervision limitation or explain the omission.

Finally, even assuming the ALJ was required to incorporate Dr. Sweeny's statements regarding Plaintiff's need for supervision or explain the omission and that such statements required a type or frequency of supervision above normal, the ALJ's RFC sufficiently accounts for this increased level of supervision by restricting Plaintiff's ability to maintain concentration, persistence, and pace to simple, routine tasks with customary work breaks and otherwise limiting Plaintiff's ability to adapt to gradual and infrequent change [Tr. 18]. *See Moore v. Comm'r of Soc. Sec.*, No. 1:20-cv-714, 2021 WL 4129344, at *2–3 (W.D. Mich. Aug. 24, 2021) (rejecting the plaintiff's argument that the ALJ failed to account for the plaintiff's "need for extra supervision" because the ALJ's RFC, "which limited Plaintiff to jobs with simple and routine tasks in settings with only occasional changes" was not inconsistent with the examiner's finding that the plaintiff "would need ongoing and extra practice and reminders, when learning and doing tasks"), *report and recommendation adopted*, 2021 WL 4125361 (W.D. Mich. Sept. 9, 2021); *Springer v. Comm'r*

24

*of Soc. Sec.*, No. 5:19 CV 2562, 2020 WL 9259707, at \*10 (N.D. Ohio Oct. 8, 2020) (finding the ALJ's RFC sufficiently accounted for the examiner's finding that the plaintiff had moderate limitations in his ability to sustain an ordinary routine without special supervision by "limit[ing] Plaintiff to jobs that only occasionally change the work setting or routine, only do so gradually, and explain changes in advance") (citing *Thompson v. Comm'r of Soc. Sec.*, No. 2:16-cv-546, 2017 WL 3446490, at \*7 (N.D. Ohio Oct. 8, 2020)), *report and recommendation adopted*, 2021 WL 1015944 (N.D. Ohio Mar. 17, 2021).

In sum, the Court identifies no error in the ALJ's RFC determination or corresponding hypothetical to the vocational expert, which "accurately portray [Plaintiff's] physical and mental impairments" and therefore "serve[s] as substantial evidence in support of the conclusion that [Plaintiff] can perform other work." *Ealy*, 594 F.3d at 516 (citation omitted). The ALJ was not required to incorporate Dr. Sweeny's statements regarding Plaintiff's need for supervision into her RFC and controlling hypothetical or explain the omission, because the statement does not constitute a specific, concrete functional limitation and is not supported by other substantial evidence in the record. Furthermore, even if the ALJ was required to do so, the ALJ's RFC sufficiently accounts for Plaintiff's need for supervision by limiting Plaintiff's ability to concentrate, persist, and maintain pace to simple, routine tasks with customary work breaks and his ability to adapt to gradual and infrequent change. Accordingly, the Court denies Plaintiff's remaining basis for remand.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 15**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

**ORDER ACCORDINGLY.**

Debra C. Poplin
United States Magistrate Judge